IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Alonzo Key, | ) | C/A No.: 1:11-1613-DCN-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Badge 450 Phillip S Miano, Badge 545 | ) | |
| Matthew Barnwell, Badge 520 Cpl | ) | |
| Spann, Badge 159 Cpl Smith, and Cpl | ) | |
| Eagerton, Officers of Aiken Department | ) | |
| of Public Safety, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Alonzo Key ("Plaintiff"), proceeding *pro se* and in forma pauperis, brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights related to his arrest. Plaintiff names as defendants members of the Aiken Department of Public Safety. This matter is before the court on Defendants' Motion for Summary Judgment. [Entry #53]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion is dispositive, this Report and Recommendation is entered for review by the district judge.

I.     Factual and Procedural Background

On January 3, 2009 around 10:00 p.m., defendant Miano stopped Plaintiff for swerving left of center in the City of Aiken. Compl. at 3 [Entry #31]. Having observed the traffic violation, and given that it was late at night, Miano avers that he was suspicious that Plaintiff may be driving under the influence of some substance. Miano

Aff. at ¶¶ 7–8 [Entry #53-2]. Miano further attests that he approached the passenger's side of the vehicle, and Plaintiff did not immediately comply with his request to roll down the passenger side window. *Id*. at ¶¶ 11–12. When Plaintiff attempted to get out of the vehicle, Miano instructed him that he could remain in the car, but asked him to roll down the window so Miano could speak with him. *Id*. at ¶ 13. Miano attests that when Plaintiff rolled down the window, Miano smelled a strong scent of alcohol emanating from the vehicle and recognized the rear passenger as a known drug user. *Id*. at ¶ 15. Miano then asked for Plaintiff's license, registration, and proof of insurance as well as the identification from the two passengers. *Id*. at ¶¶ 16–18. After receiving the paperwork from Plaintiff and identifications from the passengers, Miano returned to his vehicle and began processing the documentation. *Id*. at ¶ 20. Miano discovered that Plaintiff had not provided valid proof of insurance. *Id*. at ¶ 24.

Prior to approaching Plaintiff's vehicle, Miano had radioed in his location and that he was making a stop. *Id*. at ¶ 9. Officer Barnwell and Officer Smith, a K-9 handler, responded to the call to provide support. *Id*. at ¶¶ 22–25. Miano told Smith he suspected that Plaintiff may be driving under the influence and that there may be drugs in the vehicle. Miano and Smith decided to have the K-9 present with them sniff the vehicle. *Id*.

According to the complaint, Plaintiff did not consent to a dog sniff or search of his car the first two times he was asked, but on the third time replied, "It looks like you are going to do what you want anyways." [Entry #1 at 4]. When Miano asked Plaintiff if he had any weapons on his person before Miano frisked him, Plaintiff admitted he had a

knife and gave it to Miano. *Id.* No other weapons or contraband were found during the frisk. Plaintiff was instructed to step over on the grass to the left of the driver's side. *Id.* Miano also asked the other occupants to exit the vehicle while the K-9 sniffed the vehicle. Miano Aff. at ¶ 32 [Entry #53-2]. The rear-seat passenger admitted to having a crack pipe during Miano's frisk of her. *Id.* Miano located and secured the pipe after noting it appeared to have been used recently. *Id.*

According to Barnwell, he noticed that during the K-9 sniff of the vehicle Plaintiff began acting antsy and nervous, and began backing up. Barnwell Aff. at ¶ 12 [Entry #53-6]. Barnwell avers that he believed Plaintiff might be attempting to flee the scene, and he therefore placed him in handcuffs. *Id.* at ¶ 13. Barnwell then patted Plaintiff down[1] because he was suspicious that Plaintiff "may have something on him that he did not want the K-9 to find." *Id.* During Barnwell's pat down of Plaintiff, he found two rock-like items that he recognized as crack cocaine. *Id.* at ¶ 14.

Meanwhile, the K-9 alerted positively twice to the vehicle and, based on this, Miano and Smith began to search the vehicle. Miano Aff. at ¶¶ 37–38 [Entry #53-2]. No evidence of drugs or drug paraphernalia was found in the vehicle, although they did find "an open, and still cold, can of beer in the trunk of the vehicle." *Id.* at ¶ 39. Miano then formally informed Plaintiff that he was under arrest for possession of crack cocaine and failure to provide valid proof of insurance. *Id.* at ¶ 40.

---

[1] While Barnwell avers that Plaintiff reluctantly gave consent to this pat down, Plaintiff denies he consented. Because the court views the facts in the light most favorable to Plaintiff, the court assumes Plaintiff did not consent.

Plaintiff subsequently bonded out of jail, but was arrested again on September 21, 2009 for possession with intent to distribute ("PWID") crack cocaine. *Id*. at ¶¶ 40–42. On March 8, 2010, the grand jury convened and true billed indictments against Plaintiff for both the January 3, 2009 drug charges and the September 21, 2009 drug charges. *Id*. at ¶ 43. Plaintiff later pled guilty, pursuant to a negotiated plea agreement, to PWID crack cocaine in proximity to a school. *Id*. at ¶ 44. As part of the plea agreement, the January 3, 2009 drug charge was nolle prossed. *Id*.

Plaintiff filed this lawsuit on July 1, 2011. [Entry #1]. He claims Defendants violated his Fourth Amendment rights and seeks five million dollars in damages for alleged emotional and mental injuries he claims to have sustained as a result. *Id*. at 5. Defendants filed their motion for summary judgment on July 10, 2012. [Entry #53]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #54]. Plaintiff filed a timely response in opposition to Defendants' motion on August 13, 2012. [Entry #60]. Having carefully considered the parties' submissions and the record in this case, the court recommends granting Defendants' motion for summary judgment.

II.    Discussion

    A.    Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of

demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.    Analysis

Plaintiff's claim is for violation of his Fourth Amendment rights.  Whether characterized as false arrest, false imprisonment, or malicious prosecution, his claim is that Defendants did not have probable cause to search and/or seize him or his property. However, to the extent Plaintiff seeks damages for alleged constitutional violations stemming from his criminal arrest, prosecution, and/or sentence, his action is barred by the United States Supreme Court's ruling in *Heck v. Humprey*, which held:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 487. In so holding, the *Heck* court found that § 1983 actions for unlawful conviction or confinement necessarily require a finding that Plaintiff's prior criminal proceeding terminated in favor of the accused. *Id*. at 484–86. Thus, *Heck* bars a prisoner's claim for damages under § 1983 where success of the action would implicitly question the validity of the criminal charge, unless the prisoner can show he received a favorable termination of the charges.

Here, although the indictment and criminal charge related to Plaintiff's claim were nolle prossed, Defendants assert, and Plaintiff does not dispute, that this was due to Plaintiff entering a guilty plea to the PWID charge. Miano Aff. at ¶ 44 [Entry #53-2]. Plaintiff has the burden of proving that the *nolle prosequi* was entered under circumstances which imply or are consistent with innocence of the accused. *Nicholas v. Wal–Mart Stores, Inc.*, 33 Fed. Appx. 61, 64–65 (4th Cir. 2002) (finding the district court

erred in denying summary judgment on plaintiff's malicious prosecution claim where Plaintiff did not produce sufficient evidence from which it could be inferred that the reason for the nolle prosse of her charges was her innocence); *Hudson v. Sims*, C/A No. 3:06–2115–GRA–JRM, 2006 U.S. Dist. LEXIS 89948 at *3 (D.S.C. Sept. 25, 2006) (finding that a drug charge disposed of by *nolle prosequi* "does not necessarily constitute a favorable termination as contemplated by *Heck*.") Because there is no indication in the record that Plaintiff's indictment was nolle prossed for reasons consistent with his innocence, this was not a favorable disposition of Plaintiff's charge. *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997), *cert. denied*, 523 U.S. 1073 (1998) (finding that the plaintiff has the burden of proving a favorable termination and the abandonment of proceedings does not indicate the innocence of the accused when the *nolle prosequi* results from an agreement or compromise with the accused). Therefore, because Plaintiff has not shown these he received a favorable termination of the January 3, 2012 charge, the undersigned recommends Defendants be granted summary judgment.

III.    Conclusion

For the foregoing reasons, it is recommended that Defendants' motion for summary judgment [Entry #53] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

October 10, 2012                              Shiva V. Hodges
Columbia, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).